**IN THE UNITED STATES COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KAELYN FILLINGIM,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 1:25-CV-00788-CWB** |
| | ) | |
| **NAU COUNTRY INSURANCE CO.,** | ) | |
| **Defendant.** | ) | |

**AMENDED COMPLAINT**

**COMES NOW** the Plaintiff, Kaelyn Fillingim, by and through her undersigned attorney, and shows unto the Court the following:

**PARTIES**

1. Kaelyn Fillingim is a resident citizen of Coffee County, Alabama.
2. Defendant, NAU Country Insurance Company ("NAU") is an insurance company domiciled in Minnesota doing business in Alabama.

**JURISDICTION AND VENUE**

3. This Court has original jurisdiction over this action as the matter in controversy exceeds the sum of $75,00.00, exclusive of costs and interests, and there is complete diversity between the parties.

**FACTS COMMON TO ALL COUNTS**

4. Crop insurance is a risk management strategy that farmers use to protect their livelihoods.
5. Crop insurance policies financially protect farmers in the event they have a loss due to covered causes of loss.

6. When farmers experience covered losses, they receive payment to cover a portion of that loss.
7. Farmers apply for and purchase crop insurance from approved insurance providers ("AIP").
8. Those crop insurance policies are reinsured by the Federal Crop Insurance Corporation ("FCIC").
9. The basic provisions (Plaintiff's Exhibit 1) of the Common Crop Insurance Policy ("CCIP") begins with an agreement to provide insurance as stated in the policy to a farmer in return for payment of the insurance premium.
10. The CCIP defines "application" as the form that must be completed by the farmer and accepted by the AIP before insurance coverage will commence.
11. If cancellation or termination of insurance coverage occurs for any reason, a farmer must complete a new application to be considered for crop insurance coverage for future crop years.
12. If you are ineligible under the contract or under any Federal statute or regulation, insurance coverage will not attach.
13. According to the CCIP, the cancellation date is the calendar date specified in the crop provisions on which coverage for the crop will automatically renew unless cancelled in writing by the AIP or the farmer in accordance with the policy terms.
14. Coverage begins on the date set forth in the crop provisions or the date planting begins on the unit.

15. The "crop year" is the period within which the insured crop is normally grown, regardless of whether or not it is actually grown, and designated by the calendar year in which the insured crop is normally harvested, unless otherwise specified in the crop provisions.

16. A policy is the agreement between a farmer and FCIC to insure an agricultural commodity and consists of the accepted application, the basic provisions, the crop provisions, the special provisions, the commodity exchange provisions, if applicable, other applicable endorsements or options, the actuarial documents for the insured agricultural commodity, the catastrophic risk protection endorsement, if applicable, and the applicable regulations published in 7 FCR chapter IV.

17. Insurance for each agricultural commodity in each county will constitute a separate policy.

18. A crop insurance policy terminates on the calendar date listed in the crop provisions upon which a farmer's insurance ceases to be in effect of nonpayment of any amount due to the AIP under the policy, including premiums.

19. A policy is considered void if it is considered to not have existed for a crop year.

20. The CCIP is a continuous policy which remains in effect for each crop year following the acceptance of the initial application until canceled by the farmer or the FCIC/AIP.

21. A written agreement is a document that alters designated terms of a policy as authorized under the CCIP basic provisions, the crop provisions, or the special provisions for the insured crop.

22. If a farmer has delinquent debt with the AIP, the farmer will be ineligible to obtain crop insurance for any subsequent crop year and will result in termination of all of the farmer's crop insurance policies.

23. Ineligibility becomes effective on one of three dates:

    a. The date the policy was terminated in accordance with the CCIP for the crop which the farmer failed to pay premium, an administrative fee, or any related interest owed;

    b. The payment due date contained in any notification of indebtedness if the farmer fails to pay the debt by such date;

    c. The termination date of the crop year prior to the crop year in which a scheduled payment is due under a written payment agreement if the farmer fails to pay the amount owed by any payment date in any agreement to pay the debt.

24. A policy being terminated for unpaid premiums or administrative fees will be effective on the termination date for the crop year.

25. Once a policy is terminated, it cannot be reinstated for the current crop year unless the termination was in error among other circumstances.

26. After a farmer becomes ineligible for crop insurance, if the farmer wishes to obtain coverage for crops, the farmer must submit a new application on or before the sales closing date for the crop.

27. The United States Department of Agriculture ("USDA") maintains the Ineligible Tracking System ("ITS") database which contains records of crop producers who

are not eligible to participate in any crop insurance programs insured or reinsured by the FCIC.

28. When a farmer applies for crop insurance, the insurance company automatically checks the ITS database for the producer's eligibility. If the farmer is determined to be ineligible, the farmer must be notified, and insurance will not attach.

29. A farmer is placed on the ITS database if they have a delinquent debt with FCIC or an AIP. This situation generally arises from unpaid crop insurance premiums or administrative fees.

30. If a farmer is on the ITS database for a delinquent debt, the farmer will remain on the database until the debt is paid in full, bankruptcy is filed or the debt is discharged in a bankruptcy proceeding, or a scheduled installment payment agreement is approved.

31. Plaintiff purchased crop insurance from NAU for the 2021 crop year. Plaintiff disagreed with a policy determination which is being arbitrated separately from this issue.

32. Plaintiff's crop insurance should have automatically renewed for the 2022 crop year.

33. On February 24, 2022, Plaintiff entered into a payment agreement for unpaid premiums totaling $42,620.50 for policy number AL-942-9004769-21.

34. On March 31, 2022, Plaintiff paid the premium as agreed upon.

35. Defendant reported Plaintiff to be placed on the ITS database for the 2022 crop year, therefore Plaintiff's crop insurance policy terminated and was void.

36. Defendant gave Plaintiff absolutely no notice of their reporting Plaintiff for placement on the ITS database.

37. In September 2023, Plaintiff discovered that she did not have crop insurance for crop year 2022 due to Defendant's error.

38. An email from Jean Lang of NAU admitted that NAU wrongfully reported Plaintiff for placement on the ITS database.

39. NAU notified the Risk Management Agency ("RMA") of their mistake, and Plaintiff was removed from the ITS database, however such removal took place <u>after</u> the close of policy sales for the 2022 crop year.

40. As such, Plaintiff could not re-apply and obtain crop insurance for the 2022 crop year.

41. Plaintiff suffered a covered loss of $262,000.00 as a result of Defendant's wrongfully reporting Plaintiff for inclusion in the ITS database.

42. As a result of not having been able to file a crop insurance claim due to Defendant's conduct, Plaintiff lost a $91,700.00 federal crop disaster payment.

## COUNT ONE – BREACH OF CONTRACT

43. Plaintiff adopts and incorporates by reference the factual allegations of the preceding paragraph of this Complaint as if fully set forth herein.

44. On February 24, 2022, Plaintiff and Defendant entered into a written payment agreement (contract) for 2022 crop insurance premiums totaling $42,620.50.

45. The agreement between the parties specified that Plaintiff would pay to NAU the sum of $42,620.50 by March 31, 2022, and in consideration thereof, NAU would

forebear immediate collection action, cancellation of coverage, and placement on the RMA ITS database.

46. Plaintiff paid to NAU $42,620.50 on March 31, 2022, therefore performing her duties under the contract.

47. Defendant terminated Plaintiff's crop insurance policy and reported Plaintiff to RMA for placement on the ITS database.

48. Defendant did not return to Plaintiff the premiums paid to NAU.

49. Plaintiff suffered a covered loss in 2022 which totaled $262,000.00.

50. Because Plaintiff did not have crop insurance for 2022 due to Defendant's conduct, Plaintiff further was not eligible for a $91,700.00 federal crop disaster payment.

51. But for Defendant's wrongful conduct, Plaintiff would have been entitled to these sums from crop insurance claim payments and federal crop disaster payments.

52. Further, Plaintiff incurred attorney's fees and costs of court in bringing this action against Defendant.

**WHEREFORE**, Plaintiff prays for a judgment in her favor and against NAU for all damages, together with interest, attorney's fees and costs, and such other or further relief as the Court deems appropriate.

**COUNT TWO – UNJUST ENRICHMENT**

53. Plaintiff adopts and incorporates by reference the factual allegations of the preceding paragraphs as if fully set forth herein.

54. On February 24, 2022, Plaintiff and Defendant entered into a written payment agreement (contrat) for 2022 crop insurance premiums totaling $42,620.50.

55. The agreement between the parties specified that Plaintiff would pay to NAU the sum of $42,620.50 by March 31, 2022, and in consideration thereof, NAU would forebear immediate collection action, cancellation of coverage, and placement on the RMA ITS database.

56. Plaintiff paid to NAU $42,620.50 on March 31, 2022, therefore performing her duties under the contract.

57. Defendant terminated Plaintiff's crop insurance policy and reported Plaintiff to RMA for placement on the ITS database.

58. Defendant did not return to Plaintiff the premiums paid to NAU.

59. As a result, Defendant was unjustly enriched by any payments for 2022 crop insurance premiums received from Plaintiff.

**WHEREFORE**, Plaintiff prays for a judgment in her favor and against NAU for all damages, together with interest, attorney's fees, and costs, and such other, further, or different relief to which Plaintiff may be entitled.

**COUNT THREE – NEGLIGENCE**

60. Plaintiff adopts and incorporates by reference the factual allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

61. As an AIP, Defendant had a duty to provide federal crop insurance for which Plaintiff paid premiums.

62. Defendant breached this duty by terminating Plaintiff's crop insurance policy despite Plaintiff's payment of premiums.

63. Defendant admitted to their conduct over a year after Plaintiff was reported to RMA for inclusion in the ITS database.

64. Plaintiff's financial loss would not have occurred but for Defendant's wrongful conduct because Plaintiff's placement on the ITS database disqualified Plaintiff from federal crop insurance from any AIP and from participating in any other federal crop programs, like disaster payments.

65. Plaintiff suffered actual damages totaling $396,320.50 due to Defendant's negligence.

66. Plaintiff additionally incurred attorney's fees and costs of court in the bringing of this action.

**WHEREFORE**, Plaintiff prays for a judgment in her favor and against NAU for all damages, together with interest, attorney's fees, and costs, and such other, further, or different relief to which Plaintiff may be entitled.

## COUNT FOUR – FRAUD

67. Plaintiff adopts and incorporates by reference the factual allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

68. Plaintiff entered into a valid payment agreement with Defendant for the 2022 crop year. Under the terms of the contract, Plaintiff was to pay $42,620.50 by March 31, 2022, and in consideration thereof, Defendant agreed to forebear immediate collection, cancellation of coverage, and placement on the RMA ITS database.

69. Plaintiff performed her duties under the contract by paying to NAU $42,620.50 on March 31, 2022.

70. The check cleared the bank on April 6, 2022.

71. Defendant falsely misrepresented to Plaintiff that Plaintiff's 2022 crop insurance policy would not be cancelled as long as Plaintiff paid $42,620.50 by March 31, 2022. Plaintiff timely made payment which Defendant received, yet Defendant canceled Plaintiff's 2022 crop insurance policy and reported Plaintiff as ineligible to RMA for inclusion on the ITS database.

72. Defendant further failed to notify Plaintiff of their actions.

73. Plaintiff only discovered that Defendant cancelled her crop insurance policy and reported her as ineligible to RMA for inclusion on the ITS database well over one year later when Plaintiff attempted to file a crop insurance claim.

74. Defendant acted recklessly by terminating Plaintiff's crop insurance policy for 2022 and reporting her as "ineligible" to RMA for placement on the ITS database despite Plaintiff's timely payment of and Defendant's acceptance of the $42,620.50 payment.

75. Plaintiff reasonably relied upon Defendant's representation upon payment of the $42,620.50 payment agreement, Defendant would not terminate the 2022 crop insurance policy and report Plaintiff to RMA for placement on the ITS database.

76. Defendant admitted their wrongdoing in an email well over a year after the action was taken.

77. Defendant's actions, coupled with their failure to notify Plaintiff of their action, resulted in Plaintiff being unable to purchase crop insurance for the 2022 crop year, even if Plaintiff wished to purchase crop insurance from another AIP.

78. Plaintiff suffered actual damages totaling $396,320.50 due to Defendant's negligence.

79. Plaintiff additionally incurred attorney's fees and costs of court in the bringing of this action.

**WHEREFORE**, Plaintiff prays for a judgment in her favor and against NAU for all damages, together with interest, attorney's fees, and costs, and such other, further, or different relief to which Plaintiff may be entitled.

**COUNT FIVE – CONSTRUCTIVE FRAUD**

80. Plaintiff adopts and incorporates by reference the factual allegations of the preceding paragraphs of this complaint as if fully set forth herein.

81. Plaintiff entered into a repayment agreement with Defendant for the 2022 crop insurance premiums. Under that agreement, Plaintiff agreed to pay to Defendant $42,620.50 on or before March 31, 2022, and in return, Defendant would not terminate Plaintiff's crop insurance policy or report Plaintiff to RMA for inclusion on the ITS database.

82. Defendant falsely misrepresented to Plaintiff that she would not be reported to RMA for inclusion on the ITS database in writing by way of the payment agreement contract.

83. Defendant did, in fact, terminate Plaintiff's crop insurance coverage, and failed to provide notice to Plaintiff of the termination of her policy. Plaintiff only discovered her policy had been terminated over a year later when attempting to file a crop

insurance claim. Unfortunately, because Defendant terminated Plaintiff's policy, there was no policy under which Plaintiff could file a claim.

84. Additionally, Defendant reported Plaintiff to RMA for inclusion on the ITS database for nonpayment despite Plaintiff's timely payment under the payment agreement.

85. As Plaintiff's ongoing AIP, Defendant had a fiduciary duty to provide crop insurance coverage to Plaintiff upon payment of her premiums.

86. Plaintiff relied upon Defendant's duty to provide federal crop insurance coverage to her in exchange for payment by continuing to buy and plant, seed, fertilize and cultivate crops and harvest salvageable crops.

87. Plaintiff's reliance upon Defendant's duty to provide crop insurance coverage in exchange for the $42,620.50 premium is further indicated by Plaintiff not purchasing crop insurance elsewhere upon Defendant's wrongful termination of Plaintiff's crop insurance policy.

88. Plaintiff suffered losses totaling $396,320.50 due to Defendant's constructive fraud.

89. **WHEREFORE**, Plaintiff prays for a judgment in her favor and against NAU for all damages, together with interest, attorney's fees, and costs, and such other, further, or different relief to which Plaintiff may be entitled.

90. **WHEREFORE**, Plaintiff prays for a judgment in her favor and against NAU for all damages, together with interest, attorney's fees, and costs, and such other, further, or different relief to which Plaintiff may be entitled.

**JURY DEMAND**

91. Plaintiff demands trial by jury on all issues, claims, and counterclaims so triable.

Respectfully submitted this 27th day of October, 2025.

____________________________
Kaelyn Fillingim

____________________________
Alyse Fowler (PHI086)
Attorney for Plaintiff

**ALYSE FOWLER LAW LLC**
P. O. Box 130
Elba, AL 36323
(334) 697-4020
Alyse@AlyseFowlerLaw.com