**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KAELYN FILLINGIM,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 1:25-CV-00789-CWB** |
| | ) | |
| **NAU COUNTRY INSURANCE CO.,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S "MOTION TO DISMISS COMPLAINT AND, IN THE ALTERNATIVE, TO STAY LITIGATION AND COMPEL ARBITRATION"**

**COMES NOW** the Plaintiff, KAELYN FILLINGIM ("Fillingim") by and through her undersigned counsel of record and responds to Defendant's "MOTION TO DISMISS COMPLAINT AND, IN THE ALTERNATIEV, TO STAY LITIGATION AND COMPEL ARBITRATION" as follows:

As explained herein, Fillingim purchased federally reinsured crop insurance from NAU Country Insurance Company ("NAU") for the 2021 crop year. While multi-peril crop insurance policies are generally continuing policies, NAU, by their own admission, wrongfully and mistakenly terminated the policy for the 2022 crop year, Plaintiff contends, among other things, that because insurance did not attach for the 2022 crop year, arbitration is not required for the claims alleged in Plaintiff's Complaint.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

Federal Rule of Civil Procedure 12(b)(6) requires that a court dismiss a complaint if the Plaintiff fails to "state a claim upon which relief can be granted." A pleading that only contains "labels and conclusions" or "a formulaic recitation of the elements of a cause" is not sufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Additionally, a complaint is not sufficient if it only sets forth "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557.

To survive a 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. 544, 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Legal conclusions can provide a framework for a complaint, but those conclusions must be supported by factual allegations. *Iqbal* at 556. This pleading standard does not impose a probability requirement, but it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Brown v. City of Tulsa,* 124 F.4th 1251, 1263 (10th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court must accept as true of properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor*

*Worldwide LLC,* 985 F.3d 1272, 1281 (10th. Cir. 2021). The court must restrict its review to only the "allegations within the four corners of the complaint," and cant consider other pleadings or allegations made outside the complaint. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019) (quoting *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). However, there are specific exceptions to that rule: (1) exhibits attached to the complaint; (2) documents referenced in the complaint that are central to the plaintiff's claims whose authenticity is not dispute; and matters subject to judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). As the United States Court of Appeals for the Tenth Circuit has emphasized, a motion to dismiss is a harsh remedy which must be cautiously studied. *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (quoting *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). A well-pleaded complaint should proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (quoting *Dias,* 567 F.3d at 1178).

## II. THE FEDERAL CROP INSURANCE PROGRAM

NAU is an approved insurance provider for federally reinsured multi-peril crop insurance ("MPCI") policies pursuant to the Federal Crop Insurance Act, 7 U.S.C. §§ 1501 *et seq.* (the "Act") and in accordance with a standard reinsurance agreement between it and the Federal Crop Insurance Corporation ("FCIC"). An approved insurance provider is a "private insurance provider that has been approved by the Corporation to provide insurance coverage to producers participating in the Federal

crop insurance program." 7 U.S.C. § 1502(b)(2). Fillingim purchased a multi-peril crop insurance coverage for her cotton and peanuts in Pike County, Alabama from NAU for the 2021 crop insurance year.

The very title of the "Common Crop Insurance Policy" ("CCIP") indicates that federally reinsured multi-peril crop insurance policies are continuing policies. Section 1 of the CCIP defines "policy" as "[t]he agree between you and us to insure an agricultural commodity and consisting of the accepted application, these Basic Provisions, the Crop Provisions, the Special Provisions, the Commodity Exchange Price Provisions, if applicable, other applicable endorsements or options, the actuarial documents for the insured agricultural commodity, the Catastrophic Risk Protection Endorsement, if applicable, and the applicable regulations published in 7 C.F.R. Chapter IV." 7. CFR § 457.8. Further, the CCIP defines "you" and "your" as the named insured shown on the accepted application, and "we," "us," and "our" to refer to the insurance company providing insurance. *Id.* The CCIP defines "void" as "[w]hen the policy is considered not to have existed for a crop year. *Id.* The CCIP specifies that it is a continuous policy that remains in effect for each crop year following the acceptance of the original application until canceled by the producer in accordance with the terms of the policy or terminated by operation of the terms of the policy or by the insurer. 7 C.F.R. §457.8(2)(a). Either the producer or the insurer can cancel the policy after the initial crop year by providing written notice to the other on or before the cancellation date shown in the Crop Provisions. 7 C.F.R. §457.8(2)(d). If a producer has a delinquent debt for any policy, the producer becomes ineligible to

obtain crop insurance authorized under the Act for any subsequent crop year and results in the termination of all policies in accordance with section 2(f)(2). 7 C.F.R. §457.8(2)(f). The producer's ineligibility for crop insurance becomes effective on: (A) the date that a policy was terminated in accordance with section 2(f)(2) for the crop year in which the producer failed to pay a premium, an administrative fee, or any related interest owed, as applicable; (B) the payment due date contained in any notification of indebtedness for any overpaid indemnity, prevented planting payment or replanting payment, if the producer failed to pay the amount owed, including any related interest owed, as applicable, by such due date; or (C) the termination date for the crop year prior to the crop year in which a scheduled payment is due under a written payment agreement if the producer failed to pay the amount owed by any payment date in any agreement to pay the debt. 7 C.F.R. §457.8(2)(f)(1). Termination of the policy becomes effective on: (A) for a policy with unpaid administrative fees or premiums, the termination date immediately following the billing date for the crop year; (B) for a policy with other amounts due, the termination date immediately following the date the producer has a delinquent debt; (C) for all other policies that are issued under the Act, the termination date for the policy with the delinquent debt or, if there is no coincidental termination debt, the termination date immediately following the date the producer become ineligible; or (D) for execution of a written payment agreement and failure to make any scheduled payment, the termination date for the crop year prior to the crop year in which the producer failed to make the scheduled payment. 7 C.F.R. §457.8(2)(f)(2)(I).

Once a crop insurance policy is terminated, it cannot be reinstated for the current crop year unless, among other things, the termination was in error. 7 C.F.R. §457.8(2)(f)(2)(iii). To regain eligibility the producer must repay the debt in full, execute a written payment agreement and make payments in accordance with the agreement, or have his debts discharged in bankruptcy. 7 C.F.R. §457.8(2)(f)(3). Once a producer becomes eligible for insurance again, the producer must submit a new application on or before the sales closing date for the crop, but since applications for crop insurance cannot be accepted after the sales closing date, if the producer makes payment after the sales closing date, the producer cannot apply for insurance until the next crop year. 7 C.F.R. § 457.8(2)(f)(4). Policy cancellation dates and termination dates are contained in the Crop Provisions. 7 C.F.R. § 457.8(2)(i).

7 C.F.R. §457.8(20) outlines the mediation, arbitration, appeal, reconsideration, and administrative and judicial review guidelines for crop insurance policies. 7 C.F.R. §457.8(2)(a) specifies that if "you" (defined by the CCIP as the named insured shown on the accepted application) do not agree with "any determination" made by the insurer, the disagreement may be resolved through mediation, but if the insured and insurer do not agree to mediation, then the dispute must be resolved through arbitration.

## III. THE INELIGIBLE TRACKING SYSTEM

The Ineligible Tracking System ("ITS") is a system designed to track individuals who are ineligible to participate in any program administered by RMA under the ACT, including private insurance products authorized under the Act and

reinsured by FCIC. Risk Management Agency, *Ineligible Tracking System Handbook*, FCIC-24050 (06-2020) and FCIC-24050-1h (06-2021), Part 2, Section 201, p. 7. A person will be placed on ITS for delinquent debt as of termination date, or any other applicable due date, and may be removed pending the outcome of any dispute resolution. *Id*. Affected person will be provided an opportunity to contest and resolve a delinquent debt, or to contest the findings of an administrative proceeding, before a determination of ineligibility will be made by the AIP, *Id.* Options to contest and resolve a delinquent debt may include, depending on the policy¸ mediation, arbitration, judicial review, or appeal to NAD. *Id.* (emphasis added).

After a producer has been determined to be ineligible, certified, and their information transmitted to RMA, the producer may submit an appeal to the NAD if the person believes that they have been certified and their information transmitted to RMA in error, or if the person believes RMA or the AIP failed to give proper notice and a meaningful opportunity for review. Risk Management Agency, *Ineligible Tracking System Handbook*, FCIC-24050 (06-2020) and FCIC-24050-1h (06-2021), Part 4, Section 1, 402, p. 32. To submit an appeal to NAD, the person appealing must be the person found ineligible and included on ITS; any appeal must be submitted to NAD within 30 days of receipt of the applicable notice of ineligibility; the person who is listed on the ITS because of delinquent debt cannot appeal to NAD contesting ineligibility based solely on debt; any challenge to the debt must be made to the AIP according to the applicable policy. Risk Management Agency, *Ineligible Tracking*

*System Handbook*, FCIC-24050 (06-2020) and FCIC-24050-1h (06-2021), Part 4, Section 1, 403, p. 33.

## IV. STATEMENT OF FACTS

1. Crop insurance is a risk management strategy that farmers use to protect their livelihoods.

2. Crop insurance policies financially protect farmers in the event they have a loss due to covered causes of loss.

3. When farmer experience covered losses, they receive payment to cover a portion of that loss.

4. If cancellation or termination of insurance coverage occurs for any reason, a farmer must complete a new application to be considered for crop insurance coverage for future crop years.

5. If a producer is ineligible under the contract or under any Federal statute or regulation, insurance coverage will not attach.

6. A multi-peril crop insurance policy is <u>void</u> if it is considered to not have existed for a crop year.

7. NAU is an Approved Insurance Provider within the meaning of the Federal Crop insurance Act, 7 U.S.C. §§ 1501 *et seq.*

8. NAU sells and services federally reinsured MPCI policies pursuant to the Act, the regulations promulgated by FCIC, and the Standard Reinsurance Agreement between NAU and FCIC.

9. RMA is an agency within USDA that supervises FCIC and has authority over the delivery of all programs authorized by the Act. 7 U.S.C. § 6933(b).

10. FCIC defines "you" as "the named insured shown on the accepted application."

11. FCIC defines "void" as a policy that is considered not to have existed for a crop year.

12. The CCIP is a continuous policy which remains in effect for each crop year following the acceptance of the initial application until cancelled by the farmer or the FCIC or AIP.

13. The United States Department of Agriculture ("USDA") Risk Management Agency ("RMA") maintains the Ineligible Tracking System ("ITS") database which contains records of crop producers who are not eligible to participate in any crop insurance program insured or reinsured by the FCIC.

14. Plaintiff purchased crop insurance from NAU for the 2021 crop year. Plaintiff disagreed with a claim determination which is being arbitrated separately from this action and has absolutely nothing to do with this cause of action aside the fact that the 2021 crop year is the year from which crop insurance continued.

15. NAU "mistakenly" placed Plaintiff on the ITS database for the 2022 crop year.

16. NAU's own employee, Jean Lang, admitted to the "mistake" via email to Plaintiff, and subsequently requested Plaintiff's removal from the ITS database after

the close of policy sales for the 2022 crop year, precluding Plaintiff from obtaining crop insurance coverage for the 2022 crop year.

17. Plaintiff suffered a loss of $262,000.00 as a result of Defendant's wrongful reporting of Plaintiff for inclusion on the ITS database.

18. As a result of being ineligible for crop insurance due to NAU's admitted mistake, Defendant lost a $91,700.00 federal crop disaster payment.

## V. ARBITRATION IS NOT REQUIRED BECAUSE INSURANCE DID NOT ATTACH FOR THE 2022 CROP YEAR.

Defendant's entire argument in its Motion to Dismiss relates to a 2021 crop insurance claim denial which is factually false and clearly identified by the plain language of Plaintiff's Complaint. That claim denial is not related to Plaintiff's Complaint at all. In fact, Plaintiff's entire Complaint alleges that for the 2022 crop year, NAU "mistakenly" placed Plaintiff on the RMA Ineligible Tracking System as ineligible for crop insurance. Defendant's lengthy "Motion to Dismiss" wholly ignores the actual allegations contained in Plaintiff's Complaint. Defendant harps on about how arbitration should be compelled because a denial of a claim is a decision made by the AIP. The number "2021" occurs once in the entirety of Plaintiff's Complaint when Plaintiff explained that she purchased crop insurance from NAU for 2021, and that insurance, being a continuing policy, should have continued to the 2022 crop year but for Defendant's admitted mistake by placing Plaintiff on RMA's ITS database.

Nonetheless, due to NAU's mistake, Plaintiff was added to RMA's ITS database, and Plaintiff suffered losses as a result of Defendant's mistake. A mistake does not equal a "decision." Black's Law Dictionary defines a "mistake" as an "unintentional act, omission, or error." Website's definition of "mistake" is "a wrong action, judgment or statement." The Common Crop Insurance Policy does not define "decision" or "mistake." Webster's defines "decision" as "a firm conclusion or judgment after deliberation, the act of making that choice, the outcome of a contest, or the trait of being resolute and firm in action, meaning a final choice, a determined outcome, or resolute character." Black's Law Dictionary defines "decision" as a "judicial or agency determination after considering facts and law." Simply put, a mistake is NOT a decision.

Furthermore, because Plaintiff was deemed ineligible for any crop insurance policy for the 2022 crop year based on NAU mistakenly placing her on the ITS database, insurance did not attach, and Plaintiff was not a named insured of any crop insurance policy for the year in question based on the CCIP's definition of "you" and it's application to all of Defendant's legal principle arguments.

Simply put, no crop insurance policy existed under which Plaintiff would be required to arbitrate a decision made by the AIP, because crop insurance did not attach for the 2022 crop year. Based upon the CCIP's definition of "you" and the use of the word "you" throughout the provisions of the CCIP's sections regarding mandatory arbitration, Plaintiff was not a named insured in crop year 2022, and the clauses requiring arbitration simply would not apply to Plaintiff.

For all the foregoing reasons, this Honorable Court should outright DENY Defendant's completely unmeritorious Motion to Dismiss which does not even address a single allegation of Plaintiff's Complaint.

**WHEREFORE**, PREMISES CONSIDERED, Plaintiff respectfully requests that this Honorable Court DENY Defendant's Motion as well as any further or different relief to which Plaintiff may be entitled.

Respectfully submitted this 5th day of December, 2025.

*/s/ Alyse Fowler*
Alyse Fowler
ASB-1344-Z13D

**ALYSE FOWLER LAW LLC**
P. O. Box 130
Elba, AL 36323
(334) 697-4020
Alyse@AlyseFowlerLaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Alyse Fowler
Of Counsel