**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KAELYN FILLINGIM,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NAU COUNTRY INSURANCE COMPANY,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 1:25-cv-788-CWB** |

**MEMORANDUM OPINION AND ORDER**

## I. Introduction

Kaelyn Fillingim filed this action in the Circuit Court of Coffee County, Alabama to assert various state law claims against NAU Country Insurance Company stemming from a lack of federal crop insurance coverage for crop year 2022. (*See* Doc. 1-1). In short, Fillingim alleged that NAU wrongly designated her as being illegible for federal crop insurance for crop year 2022, later acknowledged her eligibility and accepted her premiums for crop year 2022, but then refused to pay her claims for crop year 2022. (*See id.*). Because a complete diversity of citizenship exists between the parties (*see id.* at ¶ 1; *see also* Doc. 1 at ¶ 9), and because the amount in controversy exceeds $75,000 exclusive of interest and costs (*see* Doc. 1-1 at ¶¶ 22, 32, 39, & 45), NAU timely removed the action to federal court. (*See* Doc. 1). Fillingim since has filed an Amended Complaint (Doc. 20) confirming that removal jurisdiction was satisfied and that subject matter jurisdiction continues to exist on grounds of diversity. (*See also* Doc. 7 & Doc. 10).

NAU now seeks to have the action dismissed or, alternatively, to have Fillingim compelled to pursue the underlying claims in arbitration. (*See* Doc. 5 & Doc. 21). Upon careful review and consideration, the court will conclude that arbitration is mandatory.

## II. Factual Background & Legal Framework[1]

The Federal Crop Insurance Act (the "FCIA"), 7 U.S.C. § 1501 *et seq*., was enacted "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance." *See* 7 U.S.C. § 1502(a). As part of the FCIA, Congress established the Federal Crop Insurance Corporation as an agency of the Department of Agriculture. *See id*. at § 1503. The Federal Crop Insurance Corporation is authorized to "insure, or provide reinsurance for insurers of, producers of agricultural commodities grown in the United States." *See id*. at § 1508(a)(1).

The parties are in agreement that NAU is an "approved insurance provider" under the FCIA. (*See* Doc. 5 at pp. 3, 8 & Doc. 16 at p. 4). As an approved insurance provider, NAU is authorized to "provide insurance coverage to producers participating in the Federal crop insurance program." 7 U.S.C. § 1502(b)(2); *see also Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Servs., Inc*., 121 F.3d 630, 633 (11th Cir. 1997) ("When the [FCIA] was amended in 1980, Congress authorized the [Federal Crop Insurance Corporation] to utilize private insurance companies in providing crop insurance to the nation's farmers. These private insurance companies sell and service crop insurance policies and are reinsured by the [Federal Crop Insurance Corporation].") (citations omitted). The parties further agree that Fillingim obtained crop insurance through NAU for both cotton and peanuts under a federally reinsured multi-peril crop insurance policy. (*See* Doc. 5 at p. 3, Doc. 5-5, & Doc. 16 at p. 4). And the parties agree that such crop insurance was in effect for crop year 2021. (*See* Doc. 5 at pp. 3, 10, Doc. 5-3, Doc. 16 at p. 3, & Doc. 20 at p. 5, ¶ 31).

---

[1] The parties do not appear to dispute any material fact regarding the predicate events; nor do they appear to dispute the general legal framework applicable to federal crop insurance policies.

Although crop insurance policies reinsured by the Federal Crop Insurance Corporation are entered between producers such as Fillingim and approved insurance providers such as NAU, "the policies written by approved private insurers must comply with the FCIA and its accompanying regulations." *See Davis v. Producers Agr. Ins. Co.*, 762 F.3d 1276, 1284 (11th Cir. 2014). As appliable here, the relevant terms were set out by federal regulation and incorporated verbatim into the crop insurance policies. *See* 7 C.F.R. § 457.2(b) ("The insurance is offered through companies reinsured by [the Federal Crop Insurance Corporation] that offer contracts containing the same terms and conditions as the contract set out in this part."); *id.* at § 457.104 (cotton crop insurance provisions); *id.* at § 457.134 (peanut crop insurance provisions). Among such required language is the following dispute resolution provision:

> 20. Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review
>
> (a) If you do not agree with any determination made by us except those specified in section 20(d) or (e),[2] the disagreement may be resolved through mediation in accordance with section 20(g). If the disagreement cannot be resolved through mediation, or you and we do not agree to mediation, you must timely seek resolution through arbitration in accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 20(c) and (f), and unless rules are established by FCIC for this purpose. Any mediator or arbitrator with a familial, financial or other business relationship to you or us, or our agent or loss adjuster, is disqualified from hearing the dispute.
>
> (1) All disputes involving determinations made by us, except those specified in section 20(d) or (e), are subject to mediation or arbitration. However, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.

[2] The specific exceptions relate to determinations of "good farming practices" and appeals from determinations made directly by the Federal Crop Insurance Corporation—neither of which have been argued as being applicable in this instance.

(i) Any interpretation by FCIC will be binding in any mediation or arbitration.

(ii) An arbitrator does not have the authority to:

(A) Interpret the policy or FCIC procedures; or

(B) Disregard or fail to comply with a final agency determination or FCIC interpretation issued in accordance with 7 CFR part 400, subpart X. An arbitration award that is inconsistent with section 20 may be appealed in accordance with the FAA.

(iii) An interpretation by FCIC of a policy provision is considered a determination that is a matter of general applicability.

(iv) An interpretation by FCIC of a procedure may be appealed to the National Appeals Division in accordance with 7 CFR part 11.

(2) Unless the dispute is resolved through mediation, the arbitrator must provide to you and us a written statement describing the issues in dispute, the factual findings, the determinations and the amount and basis for any award and breakdown by claim for any award. The statement must also include any amounts awarded for interest. The arbitrator does not have the authority to issue an award that does not conform to section 20. Failure of the arbitrator to provide such written statement may be appealed in accordance with the FAA. All agreements reached through settlement, including those resulting from mediation, must be in writing and contain at a minimum a statement of the issues in dispute and the amount of the settlement.

(b) Regardless of whether mediation is elected:

(1) You must initiate arbitration proceedings within 1 year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;

(2) If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through a judicial review as described in section 20(i);

(3) If arbitration has been initiated in accordance with section 20(b)(1) and completed, and a judicial review as described in section 20(i) is sought, suit must be filed not later than 1 year after the date the arbitration decision was rendered; and

(4) In any suit, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, an interpretation must be obtained from FCIC in

> accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC. Such interpretation will be binding.
>
> (c) The FAA governs arbitrations initiated under section 20(b)(1) and any decision rendered in arbitration is binding on you and us unless vacated, modified, or corrected in accordance with the FAA.
>
> ***

7 C.F.R. § 457.8, Sec. 20. It is undisputed that the arbitration provision was incorporated into Fillingim's crop insurance policy for crop year 2021. (*See* Doc. 5-1 at p. 36 & Doc. 16-1 at p. 36). And per its terms, that crop insurance policy was to remain in effect until canceled or terminated in an authorized manner (*see* Doc. 5-1 at p. 8 & Doc. 16-1 at p. 8)—all as required by federal regulation. *See* 7 C.R.F. § 457.8, Sec. 2(a) ("This is a continuous policy and will remain in effect for each crop year following the acceptance of the original application until canceled by you in accordance with the terms of the policy or terminated by operation of the terms of the policy or by us. In accordance with section 4, FCIC may change the coverage provided from year to year."); *see also id*. at Sec. 2(c) ("After acceptance of the application, you may not cancel this policy for the initial crop year. Thereafter, the policy will continue in force for each succeeding crop year unless canceled or terminated as provided below.").

A delinquent debt generally results in ineligibility for next-year crop insurance and results in termination of existing crop insurance policies. *See* 7 C.F.R. § 457.8, Sec. 2(f) ("A delinquent debt for any policy will make you ineligible to obtain crop insurance authorized under the Act for any subsequent crop year and result in termination of all policies in accordance with section 2(f)(2)."). According to Fillingim, although she was deemed to have had a delinquent debt for crop year 2021, she entered into a payment agreement with NAU and timely satisfied the payment obligations in full on or about March 31, 2022. (*See* Doc. 16 at p. 8 & Doc. 20 at p. 5, ¶¶ 33-34). Fillingim further asserts that NAU—unbeknownst to her—nonetheless reported her for inclusion

in the Ineligible Tracking System[3] and terminated her policy. (*See* Doc. 16 at p. 8 & Doc. 20 at pp. 5-6, ¶¶ 35-36). And Fillingim asserts that she only learned of the error much later when she was unable to recover on a claim for crop year 2022—also costing her a federal crop disaster payment for that year. (*See* Doc. 16 at p. 8 & Doc. 20 at p. 6, ¶ 37). NAU does not deny that its reporting of Fillingim was in error, and the record reflects that NAU admitted the error and had Fillingim belatedly removed from the Ineligible Tracking System. (*See* Doc. 15-5, Doc. 16 at p. 8, & Doc. 20 at p. 6, ¶¶ 38-39).

The question before the court is whether the claims Fillingim is attempting to assert for that error are subject to mandatory arbitration or whether they may be pursued in a judicial forum instead.

## III. Arbitration Standard

Section 2 of the Federal Arbitration Act (the "FAA") provides as follows:

> A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]

9 U.S.C. § 2. Consequently, "Section 2 requires a two-pronged inquiry: first, whether there is an arbitration agreement in writing; and second, if so, whether the agreement is part of a transaction involving interstate commerce." *Chambers v. Groome Transp. of Ala.*, 41 F. Supp. 3d 1327, 1338 (M.D. Ala. 2014); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985); *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004).

---

[3] The Ineligible Tracking System is "an electronic system to identify persons who are ineligible to participate in any program [administered under the authority of the FCIA]." *See* 7 C.F.R. § 400.675 *et seq*.

Because the standard for determining the existence of an arbitration agreement is the same as that applied to a motion for summary judgment, an order compelling arbitration is "'in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate.'" *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (citation omitted); *Bazemore v. Jefferson Capital Sys., LLC*, 827 F. 3d 1325, 1333 (11th Cir. 2016) ("[A] District Court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement."). In making that determination, the court is to view evidence of formation in a light most favorable to the non-moving party. *See Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021).

There can be no question, and indeed the parties do not assert otherwise, that the relationship between them involves interstate commerce. Courts—including this court—routinely find that disputes arising under federal crop insurance policies satisfy the interstate commerce element. *See Nobles v. Rural Cmty. Ins. Servs*., 122 F. Supp. 2d 1290, 1299 (M.D. Ala. 2000); *Lucus v. Armtech Ins. Servs*., 2:13cv249, 2015 WL 11120542, at *7 (S.D. Miss. Mar. 6, 2015); *Cain Field Nursery v. Farmers Crop Ins. All., Inc*., 4:09-cv-78, 2012 WL 1286657, at *5 (E.D. Tenn. Apr. 13, 2012); *Krstic v. Producers Agric. Ins. Co.*, No. 11-21131-CIV, 2011 WL 13223732, at *3 (S.D. Fla. Oct. 31, 2011); *Great Am. Ins. Co. v. Moye*, 733 F. Supp. 2d 1298, 1302 (M.D. Fla. 2010); *Svancara v. Rain & Hail, LLC*, 8:09CV144, 2009 WL 2982906, at *3 (D. Neb. Sept. 11, 2009); *In re 2000 Sugar Beet*, 228 F. Supp. 2d 992, 999 (D. Minn. 2002); *Ledford Farms, Inc. v. Fireman's Fund Ins. Co.*, 184 F. Supp. 2d 1242, 1244 (S.D. Fla. 2001). Tellingly, Fillingim previously initiated arbitration proceedings against NAU for claims arising out of her policy as applicable to crop year 2021. (*See* Doc. 5 at p. 10, Doc. 5-5, Doc. 16 at pp. 3,

9, & Doc. 20 at p. 5, ¶ 31). So the focus here is whether there is a written agreement to arbitrate that encompasses the claims being asserted.

**III. Discussion**

Fillingim contends that the mandatory arbitration provision in the 2021 crop year policy is not controlling because the policy was terminated as to the 2022 crop year:

> NAU wrongfully terminated Plaintiff's coverage, so no policy existed. No matter how strictly the terms and conditions of federal reinsurance policies must be complied with, Plaintiff simply cannot comply with terms and conditions that do not apply because no policy exists.

(Doc. 16 at p. 9);

> [T]he arbitration clause of the Common Crop Insurance Policy do[es] not apply in this case because Defendant wrongfully terminated Plaintiff's crop insurance policy by mistake. Defendant cannot entirely void a policy then apply the provisions of that policy to Plaintiff simply because Plaintiff once held a crop insurance policy insured by Defendant. ... Because Defendant cancelled Plaintiff's crop insurance policy, this Court cannot enforce the arbitration clause of a policy that was not even in effect for Plaintiff in 2022.

(*Id*. at pp. 9-10) (*see also* Doc. 23 at pp. 1, 11).

Fillingim's argument against arbitration admittedly is intuitive. But deeper consideration reveals that Fillingim has sliced the issue too thinly. Assuming that Fillingim's crop insurance policy for 2021 was terminated so as not to apply to crop year 2022, it does not *ipso facto* mandate the conclusion that there is no written agreement to arbitrate the current dispute involving coverage status for crop year 2022. It is beyond dispute that Fillingim had a written crop insurance policy in place for crop year 2021 that included a written provision requiring arbitration for disputes over "any determination" made by NAU. (*See* Doc. 5-1 at p. 36 & Doc. 16-1 at p. 36). There is nothing in the language of the crop insurance policy suggesting that the arbitration requirement would cease to be enforceable upon cancelation or termination of the policy, and general legal principles governing arbitration are to the contrary. *See Montgomery Mailers' Union No. 127*, No. 86-7503,

827 F.2d 709, 712 (11th Cir. 1987) ("Expiration of the … agreement does not automatically end the parties' contract rights including that of arbitration.") (citations omitted); *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 252-53 (1977).

With a written agreement to arbitrate being clearly established in the record, the dispositive issue becomes whether Fillingim's current claims fall within its scope. Again, the language of the arbitration agreement is broadly drafted to encompass "any determination" made by NAU:

> (a) If you do not agree with any determination made by us except those specified in section 20(d) or (e), the disagreement may be resolved through mediation in accordance with section 20(g). If the disagreement cannot be resolved through mediation, or you and we do not agree to mediation, you must timely seek resolution through arbitration in accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 20(c) and (f), and unless rules are established by FCIC for this purpose. Any mediator or arbitrator with a familial, financial or other business relationship to you or us, or our agent or loss adjuster, is disqualified from hearing the dispute.
>
> (1) All disputes involving determinations made by us, except those specified in section 20(d) or (e), are subject to mediation or arbitration.

(*See* Doc. 5-1 at p. 36 & Doc. 16-1 at p. 36) (emphasis added). And again, the policy provisions were intended to roll forward to each ensuing year:

> This is a continuous policy and will remain in effect for each crop year following the acceptance of the original application until canceled by you in accordance with the terms of the policy or terminated by operation of the terms of the policy or by us. …

(*See* Doc. 5-1 at p. 8 & Doc. 16-1 at p. 8).

Fundamentally, this is a dispute over NAU's retroactive termination of the 2021 policy that otherwise had automatically renewed into 2022. In each count of the Amended Complaint, Fillingim expressly refers to NAU's act of policy termination vis-à-vis its reporting of her for inclusion in the Ineligible Tracking System:

| | |
|---|---|
| Count One | "47. Defendant terminated Plaintiff's crop insurance policy and reported Plaintiff … for placement on the [Ineligible Tracking System] database." |
| Count Two: | "57. Defendant terminated Plaintiff's crop insurance policy and reported Plaintiff … for placement on the [Ineligible Tracking System] database." |
| Count Three: | "62. Defendant breached this duty by terminating Plaintiff's crop insurance policy despite Plaintiff's payment of premiums." |
| Count Four: | "71. … Defendant canceled Plaintiff's 2022 crop insurance policy and reported Plaintiff as ineligible … for inclusion on the [Ineligible Tracking System] database." |
| Count Five: | "83. Defendant did, in fact, terminate Plaintiff's crop insurance coverage … . Unfortunately, because Defendant terminated Plaintiff's policy there was no policy under which Plaintiff could file a claim." |

(*See* Doc. 20 at pp. 9-12). The same acknowledgment appears throughout Fillingim's briefing. (*See* Doc. 16 at p. 1: "NAU wrongfully terminated Plaintiff's crop insurance for 2022") (*id*. at p. 3: "Defendant terminated Plaintiff's insurance policy and reported a nonexistent delinquent debt … resulting in Plaintiff being wrongfully deemed ineligible for federally reinsured crop insurance.") (*id*.: "Plaintiff plead that she purchased crop insurance from Defendant for the 2021 crop year, which automatically renewed without additional application for the 2022 crop year.") (*id*. at p. 9: "Defendant wrongfully terminated Plaintiff's coverage and referred Plaintiff … for inclusion on the [Ineligibility Tracking System]."). It cannot reasonably be concluded that NAU's decision to terminate Fillingim's crop insurance policy—erroneous or not—was not a "determination" sufficient to trigger application of the arbitration provision. (*See* Doc. 5-1 at p. 8:

discussing termination in context of being made "by us"). Fillingim's claims do not become untethered from an NAU "determination" merely because she has labeled them as arising under the parties' written payment agreement—especially considering that such payment agreements are contemplated in the crop insurance policy itself. *See Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 384 (11th Cir. 1996) ("Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted.").

Neither party has cited, nor has the court independently been able to locate, any authority speaking to the precise issue now presented. But the court finds guidance in the decision of the United States District Court for the Middle District of Tennessee in *Driver v. Pro Ag Mgmt., Inc.*, No. 3:16-CV-01959, 2017 WL 4682482, at *1 (M.D. Tenn. Oct. 18, 2017). The plaintiff in *Driver* entered into a written agreement to pay a sum certain debt to his approved insurance provider no later than August 1, 2015. *Id.* at *1. When he missed the payment deadline by a matter of days, the plaintiff was submitted for ineligible status by that approved insurance provider. *Id.* at *2. Due to the submission of his ineligibility, the plaintiff's then current approved insurance provider suspended and later denied a 2015 claim that had been in process. *Id.* The plaintiff thus initiated a lawsuit against both approved insurance providers on claims for negligence. *Id.* The second approved insurance provider opposed arbitration on grounds that it had no choice but to cancel the policy once the plaintiff was deemed ineligible and that it thus did not make a "determination" falling within the scope of the arbitration provision. *Id.* at *4. Citing the liberal federal policy in favor of arbitration, the court stated it simply could not conclude that the dispute was not subject to arbitration. *Id.* More particularly, the court found that the second approved insurance provider had made its own decisions—including "that [the plaintiff] was not eligible for crop insurance in 2015," which resulted in "his 2015 policies [being] terminated." *Id.* (citations omitted).

It indeed is well recognized that "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Moreover, "it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citations omitted); *see also id.* ("Doubts should be resolved in favor of coverage."); *Kidd v. Equitable Life Assur. Soc. of U.S.*, 32 F.3d 516, 519 (11th Cir. 1994). Fillingim has offered no justification as to why the presumption in favor of arbitration should not be applied here just as it has been in response to other attempts to limit the scope of the Section 20 arbitration provision. *See, e.g., Lucus*, 2015 WL 11120542 at *9 ("The Court's duty to resolve any doubts regarding the scope of arbitrable issues in favor of arbitration is beyond question. Based on that duty, the Court declines to deny arbitration pursuant to the Plaintiff's characterization of ARMtech's arbitrable 'determination' as a non-arbitrable failure to act.").

## IV. Conclusion

For the reasons stated above, it is hereby **ORDERED** that the "Defendant's Motion to Dismiss Complaint and, In the Alternative, to Stay Litigation and Compel Arbitration" (Doc. 5) and the "Defendant's Renewed Motion to Dismiss Plaintiff's Amended Complaint and, In the Alternative, to Stay Litigation and Compel Arbitration" (Doc. 21) are **GRANTED IN PART** as follows:

- all claims set out in the Amended Complaint are compelled to arbitration;
- Fillingim must initiate arbitration proceedings within 60 days from the date hereof;
- Fillingim and NAU must file a joint status report in this action no later than the fifth day of the month for the months of January, April, July, and October beginning January 2027 and continuing until their arbitration proceedings are concluded;
- Fillingim and NAU must file a final status report no later than 21 days after completion of their arbitration proceedings; and
- all proceedings in this action are stayed in the interim.[4]

The pending motions (Doc. 5 & Doc. 21) are **DENIED WITHOUT PREJUDICE** in all other respects, and all arguments for or against arbitration are deemed **WAIVED** to the extent not raised.

**DONE** this the 31st day of August 2026.

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**

4 *See* 9 U.S.C. § 3 (mandating a stay of proceedings, if requested, when a finding has been made that claims are referable to arbitration).